UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JEFFREY MILLS,

          Plaintiff,

    v.

K. MITCHELL, et al.,

          Defendants.

Case No. 16-cv-05095-HSG

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT FOR FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES**

Re: Dkt. No. 24

        Plaintiff, an inmate at San Quentin State Prison ("SQSP"), has filed a *pro se* complaint under 42 U.S.C. § 1983. Now pending before the Court is Defendants' motion for summary judgment for failure to exhaust administrative remedies. Dkt. No. 24. Plaintiff has filed an opposition and related documents, Dkt. Nos. 25 and 26; and Defendants have filed a reply, Dkt. No. 29. For the reasons set forth below, Defendants' motion for summary judgment is GRANTED.

**DISCUSSION**

        The following facts are undisputed unless otherwise indicated.

**A.    Complaint**

        On April 19, 2016, the instant complaint was filed in Marin County Superior Court. Dkt. No. 1 and Dkt. No. 11 at 1. On September 2, 2016, Defendants removed this action to federal court. Dkt. No. 1.

        The complaint makes the following allegations. In late 2014, Officer Arana removed Plaintiff from his job. Dkt. No. 1-1 at 7 and 15. Plaintiff filed a grievance that successfully challenged the job removal as improper. *Id.* Officer Arana retaliated against Plaintiff in various ways, in violation of the First Amendment. *Id.* Plaintiff reported Officer Arana's harassment and

1  retaliation to Officer Arana's supervisors, Sgt. J. Van Blarcom, Lt. B.A. Wells, and Capt. E.

2  Evans. Plaintiff also filed grievances that formally notified these supervisor-defendants of Officer

3  Arana's harassment and retaliation. *Id.* These supervisor-defendants ignored Plaintiff's

4  complaints and grievances and allowed Officer Arana to continue his retaliatory actions against

5  Plaintiff. *Id.* Officer Mitchell covered up the other defendants' misconduct. *Id.*

6  In its screening order, the Court found that the following allegations in the complaint stated

7  cognizable First Amendment claims and cognizable state-law intentional tort claims for violation

8  of Plaintiff's civil rights: (1) Officer Arana removed Plaintiff from his lead yard attendant job in

9  May 2015 and reassigned him to sweeping and mopping stairs; withheld Plaintiff's May 2015 pay;

10  moved Plaintiff from his cell in June 2015; and continually harassed Plaintiff from late 2014

11  through March 2016 in retaliation for filing a successful grievance; (2) Sgt. Blarcom, Lt. Wells,

12  and Capt. Evans participated in the retaliation and civil rights violations when they were informed

13  of, but did not stop, Officer Arana's retaliation and harassment; (3) Officer Mitchell participated in

14  the retaliation and civil rights violations when he covered up the other defendants' misconduct;

15  and (4) all defendants engaged in retaliation and civil rights violations when they conducted a

16  "massive" search of Plaintiff's cell in February 2016; moved him from his cell in February 2016;

17  added false documents to his grievances; and falsified a 129B chrono. Dkt. No. 14 at 5–7.

18  **B.  Plaintiff's Grievances**

19  Plaintiff alleges that he has filed eight grievances relevant to this action. Dkt. No. 26.

20  However, he only identifies and discusses two of these eight grievances: Grievance No. SQ-15-

21  02514 and Grievance No. SQ-15-01751. Dkt. Nos. 25 and 26.

22  The Inmate / Parolee Appeals Tracking System ("IPATS") tracks all grievances submitted

23  to the third level of review, regardless of whether these grievances are adjudicated on the merits or

24  screened out. According to the IPATS, between January 2015 (when Plaintiff alleges the

25  harassment and retaliatory actions started) and April 19, 2016 (when this action was filed in state

26  court), Plaintiff filed seven grievances: SQ-15-00059; SQ-15-01300; SQ-15-01751; SQ-15-

27  02389; SQ-15-02514; SQ-15-03254; and SQ-16-00644.

28  After reviewing the record, the Court has only identified three grievances which are

2

1  relevant to the issues raised in this action: SQ-15-1751; SQ-15-02514, and SQ-15-03254.[1]

2  **1.  SQ-15-01751**

3  Grievance No. SQ-15-01751 was submitted on June 11, 2015.  This grievance alleged that

4  Officer Arana had harassed Plaintiff by *inter alia* illegally removing him from his job;

5  withholding his May 2015 pay; and moving him to a new cell.  Dkt. No. 24-1 at 33–40.  Grievance

6  No. SQ-15-01751 further alleged that, despite Plaintiff's repeated requests, Officer Arana's

7  supervisors — whom he did not identify by name — refused to stop Officer Arana's harassment.

8  *Id.*  The grievance bypassed the first level of review, and was handled at the second level of

9  review by the SQSP Appeals Coordinator.  This grievance was denied at the second level of

10  review on September 20, 2015.  *Id.* at 33–34.  In October 2015, Plaintiff appealed the September

11  2015 second level response to the Office of Appeals, Dkt. No. 25 at 28, which is responsible for

12  performing the third level of review, 15 Cal. Code Regs. § 3084.7(d)(3).  The Office of Appeals

13  issued a modification order which ordered the SQSP Appeals Coordinator to amend the previously

14  issued second level response.  Dkt. No. 24-1 at 3.

15  On December 1, 2015, Plaintiff received a letter from the Office of Appeals.[2]  Dkt. No. 25

16  at 50.  In this letter, the Office of Appeals acknowledged receipt of Plaintiff's appeal of the second

17  level decision and informed Plaintiff that the grievance had been forwarded back to the SQSP

18  Appeals Coordinator for issuance of an amended second level decision.  *Id.*  The Office of

19  Appeals also informed Plaintiff that if the SQSP Appeals Coordinator did not provide Plaintiff

20  with the amended second level response in a reasonable time, Plaintiff could inquire with the

21

22  [1] Although Plaintiff has not identified Grievance No. SQ-15-03254 as relevant to this action, the
Court's review of the record indicates that this grievance also grieves an issue raised in this action,
23  namely that Officer Arana filed a false official state document business record in the course of
duty.  Dkt. No. 24-1 at 66–69.  Grievance Nos. SQ-15-00059; SQ-15-01300; SQ-15-02389; and
24  SQ-16-00644 grieved issues unrelated to this action.  In Grievance No. SQ-15-00059, Plaintiff
successfully challenged his December 2015 removal from his job assignment as a housing unit
25  porter.  Dkt. No. 24-1 at 10–19.  In Grievance No. SQ-15-01300, Plaintiff alleged that because he
had been inappropriately removed from his porter job assignment, he was entitled to back pay for
26  the time he was unable to work as a porter.  Dkt. No. 24-1 at 21–30.  In Grievance No. SQ-15-
02389, Plaintiff sought to obtain a copy of his timekeeping sheet and his pay sheet.  Dkt. No. 24-1
27  at 46–51.  In Grievance No. SQ-16-00644, Plaintiff alleged that Officer Johnson, a nonparty to
this action, filed a false Form CDC-128-B.
28  [2] This December 1, 2015 letter appears to be a response to a status inquiry submitted by Plaintiff
to the Office of Appeals.

3

1  SQSP Appeals Coordinator.  *Id.*  The Office of Appeals further informed Plaintiff that if he were

2  dissatisfied with the further action taken by the SQSP Appeals Coordinator, he must, within 30

3  calendar days of receiving the amended second level response, appeal the amended second level

4  decision.  *Id.*

5  On January 11, 2016, an amended second level response was issued.  Dkt. No. 24-1 at 41–

6  42.  On January 14, 2016, Plaintiff appealed this amended second level response to the Office of

7  Appeals.  Dkt. No. 25 at 34.

8  The Office of Appeals issued a second modification order and again sent the amended

9  second level response back to the SQSP Appeals Coordinator.  Dkt. No. 25 at 28.   The SQSP

10  Appeals Coordinator again amended the second level response and, in May 2016, issued another

11  amended second level response.  Dkt. No. 25 at 28.

12  On May 15, 2016, Plaintiff appealed the May 2016 amended second level response.  Dkt.

13  25 at 31–34.  In this appeal, Plaintiff informed prison officials that he had completed the required

14  "level of responses," in that he had submitted his appeal for the third level of review three times,

15  on October 6, 2015; January 14, 2016; and May 15, 2016:

> Chief of Inmate Appeals M. Voong.  For the second time you have sent back my 602 Log
> # SQ-F-15-01751 for a (mod order) to SQ Appeals Coordinator for what ever reason that
> you have (2) What does this have to do with me?  (3) Twice Ive had to form 22 SQ (AC) to
> get my 602 back in order to make sure that it get's back to you for processing.  (4) This
> (mod order) is strictly between you and SQ AC not me.  (5) My job was to complete my
> level of responses and forward it to you of which I did (3) times now (10-6-15) (1-14-16)
> & (5-15-16).  My job was done on 10-6-15.  (6) Chief of Inmate Appeals M. Voong you
> have a duty & responsibility for making (SQ)(AC) adhere to their order/instructions not
> me.  The modification order was imposed by the 3rd level per CCR 3084.7(i)(1)(2)(3).
> That it is Sacramento Chief I/M Appeals over see's (SQ)(AC) office and all other CDCR
> Prison's as Chief Supervisor to insure said medication order done by subordinate (AC's) in
> a Timely manner.  It is unlawful to delegate appellant to oversee these duties in which the
> taxpayer's are paying you to do.  Now please can you process my complaint without any
> further delays.

24  Dkt. No. 25 at 31–34.

25  On September 2, 2016, Plaintiff received a letter from the Office of Appeals.[3]  Dkt. No. 25

26  at 47.  In this letter, the Office of Appeals acknowledged receipt of Plaintiff's appeal of the second

27

---

28  [3] This September 2, 2016 letter appears to be a response to a status inquiry submitted by Plaintiff
to the Office of Appeals.

4

1    level decision and informed Plaintiff that the grievance had been forwarded back to the SQSP

2    Appeals Coordinator to provide an amended second level decision. *Id.* The Office of Appeals

3    also informed Plaintiff that if the SQSP Appeals Coordinator did not provide Plaintiff with the

4    amended second level response in a reasonable time, Plaintiff could inquire with the SQSP

5    Appeals Coordinator. *Id.* The Office of Appeals further informed Plaintiff that if he was

6    dissatisfied with the further action taken, he had to appeal the amended second level decision

7    within 30 calendar days of receiving the amended second level response. Dkt. No. 25 at 47.

8         On September 12, 2016, the Office of Appeals issued yet another modification order, again

9    directing the SQSP Appeals Coordinator to modify the second level response:

> Based on a Third Level Decision the appellant will be provided revised information relative to appeal SQ-15-01751, addressing that a policy violation did occur with respect to one or more of the appeal issue being raised. Specifically, the appellant was removed from his job assignment without a Committee Review. This information will be documented on a Staff Complaint E-3, and the information will be consistently revised on all associated documents and submitted to the Hiring Authority for subsequent review.

Dkt. No. 25 at 48.

     On September 19, 2016, the SQSP Appeals Coordinator issued another amended second

level response which specified that this response superseded all prior responses provided to

Plaintiff regarding this grievance. The memorandum informed Plaintiff that, after further

reviewing the issues raised in Grievance No. SQ-15-01751, prison officials had determined that

the removal of Plaintiff from his work assignment violated CDCR policy, specifically section

3040(c), (f) of the California Code of Regulations, title 15. The memorandum found that the other

allegations of harassment were unsupported. The memorandum concluded:

> **This response does not limit or restrict the availability of further relief via the inmate appeals process.** If you have not already done so, and you wish to further appeal the decision, you must submit your staff complaint appeal through all levels of appeal review up to, and including, the Secretary's Level of Review.
>
> With a rendering of a decision at the Third Level of Review your administrative remedies will be considered exhausted.

Dkt. No. 25 at 49 (emphasis in original).

     There is nothing in the record that indicates any further filings or appeals by Plaintiff after

September 19, 2016, or any memorandums or decisions issued by prison officials after September

5

19, 2016.

### 2. SQ-15-02514

Grievance No. SQ-15-02514 was submitted on August 26, 2015. This grievance alleged that Officer Arana had been harassing Plaintiff since May 2, 2015 in the following ways: treating Plaintiff with disrespect and contempt in the presence of other inmates; instructing Plaintiff to clean areas that were the responsibility of other porters; and trying to get Plaintiff to quit his job or accept another job assignment. Dkt. No. 24-1 at 57–60. The grievance also alleged that Plaintiff had reported these acts of retaliation to the unit sergeant on August 11, 2015; to Lt. Walls on August 12, 2015; and to Officer Arana on August 13, 2015. *Id.* The grievance further alleged that, on August 20, 2015 and August 26, 2015, in order to retaliate against for Plaintiff filing prison grievances, Officer Arana and Lt. Walls urged Plaintiff to consider going to third watch or to accept a different job. *Id.*

On October 23, 2015, Plaintiff's grievance was denied at the second level of review on the grounds that the allegations were unfounded. The second level denial was mailed to Plaintiff on October 29, 2015. Dkt. No. 24-1 at 58 and 61–62. On November 2, 2015, Plaintiff appealed the second level response, and on June 22, 2016, this grievance was denied at the third level. *Id.* at 55–56.

### 3. SQ-15-03254

Grievance No. SQ-15-03254 was submitted on November 5, 2015. This grievance alleged that Officer Arana filed a false official state document business record in the course of duty when he issued a CDC-128-B (rules violation report) falsely accusing Plaintiff of refusing to sign an inmate job description on October 22, 2015. Dkt. No. 24-1 at 66–69. This grievance also alleged that Officer Arana's issuance of the false CDC-128-B was part of an ongoing pattern of harassment and retaliation by Officer Arana. *Id.* On April 13, 2016, this grievance was granted in part at the first level in that the challenged CDC-128-B was removed from Plaintiff's file because there was a discrepancy between the dates listed on Plaintiff's job description and those listed on the challenged CDC-128-B. *Id.* at 70–71. Officer Arana was instructed to author a new CDC-128-B with the current date that would document, to the best of Officer Arana's memory, the date

1    on which Plaintiff refused to sign the job description. *Id.* On May 12, 2016, Plaintiff appealed the

2    first level response. *Id.* at 67. On June 25, 2016, this grievance was partially granted at the

3    second level with respect to Plaintiff's request that he not suffer any reprisals, harassment, or

4    retaliation, but denied in that the second level response found that the CDC-128-B issued by

5    Officer Arana did not violate any policy or procedure regarding appropriate documentation. *Id.* at

6    72–73. On August 21, 2016, Plaintiff appealed the second level response. *Id.* at 67. On

7    September 28, 2016, the appeal was denied at the third level. *Id.* at 64–65.

**DISCUSSION**

**A.     Legal Standard**

10    Summary judgment is proper where the pleadings, discovery and affidavits show there is

11    "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

12    law." *See* Fed. R. Civ. P. 56(a) (2014). Material facts are those that may affect the outcome of the

13    case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material

14    fact is genuine if the evidence is such that a reasonable jury could return a verdict for the

15    nonmoving party. *See id.*

16    A court shall grant summary judgment "against a party who fails to make a showing

17    sufficient to establish the existence of an element essential to that party's case, and on which that

18    party will bear the burden of proof at trial [,] . . . since a complete failure of proof concerning an

19    essential element of the nonmoving party's case necessarily renders all other facts immaterial."

20    *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The moving party bears the initial

21    burden of identifying those portions of the record that demonstrate the absence of a genuine issue

22    of material fact. *Id.* The burden then shifts to the nonmoving party to "go beyond the pleadings

23    and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on

24    file,' designate 'specific facts showing that there is a genuine issue for trial.'" *See id.* at 324

25    (citing Fed. R. Civ. P. 56(e)).

26    For purposes of summary judgment, the court must view the evidence in the light most

27    favorable to the nonmoving party; if the evidence produced by the moving party conflicts with

28    evidence produced by the nonmoving party, the court must assume the truth of the evidence

7

1    submitted by the nonmoving party.  *See Leslie v. Grupo ICA*, 198 F.3d 1152, 1158 (9th Cir. 1999).

2    The court's function on a summary judgment motion is not to make credibility determinations or

3    weigh conflicting evidence with respect to a disputed material fact.  *See T.W. Elec. Serv., Inc., v.*

4    *Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

5    **B.      Exhaustion**

6           The Prison Litigation Reform Act of 1995, Pub. L. No. 104-134, 110 Stat. 1321 (1996)

7    ("PLRA"), amended 42 U.S.C. § 1997e to provide that "[n]o action shall be brought with respect

8    to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in

9    any jail, prison, or other correctional facility until such administrative remedies as are available are

10   exhausted."  42 U.S.C. § 1997e(a).  Exhaustion is mandatory and no longer left to the discretion of

11   the district court.  *Woodford v. Ngo*, 548 U.S. 81, 84 (2006).  Courts may not create their own

12   "special circumstances" exceptions to the exhaustion requirement.  *Ross v. Blake*, 136 S. Ct. 1850,

13   1856 (2016) (reversing Fourth Circuit's ruling that failure to exhaust was justified where prisoner

14   reasonably but mistakenly believed he had exhausted administrative remedies).

15          A prisoner must exhaust administrative remedies before bringing his suit to federal court,

16   even if the prisoner fully exhausts while the suit is pending.  *McKinney v. Carey*, 311 F.3d 1198,

17   1199 (9th Cir. 2002); *see Vaden v. Summerhill*, 449 F.3d 1047, 1051 (9th Cir. 2006) (where

18   administrative remedies are not exhausted before prisoner sends complaint to court, action will be

19   dismissed even if exhaustion is completed by time complaint is actually filed).  Prisoners must

20   exhaust all available remedies, regardless of whether the remedies meet federal standards or

21   whether the remedies are plain, speedy and effective.  *Porter v. Nussle*, 534 U.S. 516, 524 (2002);

22   *see also Woodford*, 548 U.S. at 84.  The Supreme Court has identified three circumstances where

23   an administrative remedy is unavailable.  *Ross*, 136 S. Ct. at 1859.  First, "an administrative

24   procedure is unavailable when (despite what regulations or guidance materials may promise) it

25   operates as a simple dead end—with officers unable or consistently unwilling to provide any relief

26   to aggrieved inmates."  *Id.* (offering as example prison handbook "directing inmates to submit

27   their grievances to a particular administrative office—but in practice that office disclaims the

28   capacity to consider those petitions").  Second, "an administrative scheme might be so opaque that

8

1  it becomes, practically speaking, incapable of use." *Id.* (offering as example situation where

2  "some mechanism exists to provide relief, but no ordinary person can discern or navigate it").

3  Third, an administrative remedy is not available "when prison administrators thwart inmates from

4  taking advantage of a grievance process through machination, misrepresentation, or intimidation."

5  *Id.* at 1863 (citing as examples *Woodford*, 548 U.S. at 102, and various appellate court cases

6  addressing "a variety of instances in which officials misled or threatened individual inmates so as

7  to prevent their use of otherwise proper procedures"). The *Ross* court describes these categories as

8  "three kinds of circumstances," *id.* at 1859, and does not suggest that these categories are

9  exclusive.

10  Proper exhaustion requires using all steps of an administrative process and complying with

11  "deadlines and other critical procedural rules." *Woodford*, 548 U.S. at 90. The level of detail in

12  an administrative grievance necessary to properly exhaust a claim is determined by the prison's

13  applicable grievance procedures. *Jones v. Bock*, 549 U.S. 199, 218 (2007); *see also Sapp v.*

14  *Kimbrell*, 623 F.3d 813, 824 (9th Cir. 2010) ("To provide adequate notice, the prisoner need only

15  provide the level of detail required by the prison's regulations.").

16  The defendant's burden is to prove that there was an available administrative remedy and

17  that the prisoner did not exhaust that available administrative remedy. *Albino v. Baca*, 747 F.3d

18  1162, 1172, 1176 (9th Cir. 2014) (en banc) (reversing district court's grant of summary judgment

19  to defendants on exhaustion issue because defendants did not carry their initial burden of proving

20  that there was an available administrative remedy that prisoner-plaintiff failed to exhaust); *see also*

21  *Brown v. Valoff*, 422 F.3d 926, 936–37 (9th Cir. 2005) (there can be no absence of exhaustion

22  unless some relief remains available; movant claiming lack of exhaustion must demonstrate that

23  pertinent relief remained available, whether at unexhausted levels or through awaiting results of

24  relief already granted as result of administrative remedy process). Once the defendant has carried

25  that burden, the prisoner has the burden of production. *Albino*, 747 F.3d at 1172. That is, the

26  burden shifts to the prisoner to come forward with evidence showing that there is something in his

27  particular case that made the existing and generally available administrative remedies effectively

28  unavailable to him. *Id*; *see also Draper v. Rosario*, 836 F.3d 1072, 1079–80 (9th Cir. 2016).

United States District Court
Northern District of California

### C. CDCR Grievance Procedure

The California Department of Corrections and Rehabilitation ("CDCR") provides its inmates the right to appeal administratively "any policy, decision, action, condition, or omission by the department or its staff that the inmate or parolee can demonstrate as having a material adverse effect upon his or her health, safety, or welfare." 15 Cal. Code Regs. § 3084.1(a). In order to exhaust available administrative remedies within this system, a prisoner must submit his complaint on CDCR Form 602 (referred to as a "602") and proceed through three levels of review: (1) screening at the first level of review by a prison official who did not participate in the event at issue and who is of equivalent or higher rank than the participating staff, unless the first level of review is exempted; (2) a second level of review by a hiring authority or designee at a level no lower than Chief Deputy Warden, Deputy Regional Parole Administrator, or the equivalent; and (3) a third level of review by a designated representative under the supervision of the third level Appeals Chief or equivalent. *Id*. § 3084.7. The third level of review exhausts administrative remedies. *Id.* § 3084.7(d)(3).

The CDCR regulations in force at all times relevant to Plaintiff's claims required inmates to identify the staff members involved with the following level of specificity:

> The inmate or parolee shall list all staff member(s) involved and shall describe their involvement in the issue. To assist in the identification of staff members, the inmate or parolee shall include the staff member's last name, first initial, title or position, if known, and the dates of the staff member's involvement in the issue under appeal. If the inmate or parolee does not have the requested identifying information about the staff member(s), he or she shall provide any other available information that would assist the appeals coordinator in making a reasonable attempt to identify the staff member(s) in question. [¶] The inmate or parolee shall state all facts known and available to him/her regarding the issue being appealed at the time of submitting the Inmate/Parolee Appeal form, and if needed, the Inmate/Parolee Appeal Form Attachment.

15 Cal. Code Regs. § 3084.2(a)(3)–(4).

### D. Analysis

Plaintiff does not dispute that there was an administrative remedy available to him. The Court therefore examines whether Defendants have carried their burden of proving that Plaintiff failed to exhaust that available administrative remedy, and whether, if applicable, Plaintiff has carried his burden of providing evidence from which it can be reasonably inferred that there is

1    something in his particular case that made the existing and generally available administrative

2    remedies effectively unavailable to him.

3            **1.      Defendant Arana**

4            Defendants argue that Plaintiff has not exhausted the following claims against Officer

5    Arana:  in retaliation for Plaintiff's successful grievance regarding being removed from his job in

6    late 2014, Officer Arana moved Plaintiff from his cell in June 2015; harassed Plaintiff daily from

7    December 2015 to March 25, 2016; did not distribute Plaintiff's May 2015 salary, conducted a

8    "massive" search of Plaintiff's cell in February 2016; again moved Plaintiff from his cell in

9    February 2016; added documents to a grievance filed by Plaintiff; and falsified a CDCR Form

10   128B.  Dkt. No. 24 at 6.  Defendants argue that none of the three relevant grievances exhausted

11   Plaintiff's claims because Grievance No. SQ-15-01751 was not appealed to the third and final

12   level of review; and because Plaintiff failed to exhaust Grievance Nos. SQ-15-02514 and SQ-15-

13   03254 prior to filing this action.

14           **a.      SQ-15-01751**

15           The parties do not dispute that Grievance No. SQ-15-01751 raises the following issues:

16   general harassment by Officer Arana, failure of Officer Arana's supervisors to address the

17   harassment, withholding of Plaintiff's May 2015 pay, and the June 2015 cell move.  Dkt. No. 29 at

18   3.  Viewing the facts in the light most favorable to Plaintiff, this grievance also alleged that

19   Officer Arana illegally removed Plaintiff from his job in May 2015.[4]

20           It is undisputed that Grievance No. SQ-15-01751 was not appealed to the third and final

21   level of review.  Dkt. No 25 at 6 and 8.  Plaintiff argues that, pursuant to section 3084.7(i)(3) of

22   the California Code of Regulations, title 15, inmates need not obtain a third level decision in order

23

24   [4] Grievance No. SQ-15-01751 is not clear as to whether Plaintiff was grieving the December 2014
     removal from his job or the May 2015 removal from his job:
25          I have been experiencing a line of harrassments (sic), in the form of abuses after abuses of
            authority by West Block Second Watch Officer Arana, beginning with an illegal removal
26          from my assignment as a lead west block porter. (Cont @ "A").  This illegal removal (see
            pp 6, the illegal removal; then 7, where the matter was supposedly resolved, then 8-9,
27          where the matter was indeed resolved) is indeed not resolved.
     Dkt. No. 24-1 at 35.  At summary judgment, the Court must draw all reasonable inferences in
28   favor of the non-moving party.  *Tolan v. Cotton*, 134 S. Ct. 1861, 1868 (2014).  The Court
     therefore presumes that Plaintiff was grieving the May 2015 removal that is at issue in this action.

1    to exhaust administrative remedies where prison officials fail to complete modification orders

2    within the prescribed deadlines, as he claims is the case with Grievance No. SQ-15-01751. Dkt.

3    No. 25 at 8. Plaintiff also argues that administrative remedies were effectively unavailable to him

4    because the September 19, 2016 "document" "erroneously" informed him that a third level

5    decision had already been rendered on the issues raised in the grievance outside of the claim that

6    he was improperly removed from his job. Finally, Plaintiff also argues that any failure to exhaust

7    was excused when Defendants decided his grievance on the merits. Dkt. No. 25 at 9–10.

8    Defendants argue that Plaintiff has misread section 3084.7(i)(3), and contend that, contrary to

9    Plaintiff's argument, the September 19, 2016 letter specified that a third level of review remained.

10   Defendants do not directly address Plaintiff's remaining argument.

11                              **i)       15 Cal. Code Regs. § 3084.7(i)**

12           Within the CDCR administrative grievance procedure, a modification order refers to an

13   order issued during the grievance procedure that directs the modification of a lower level decision.

14   15 Cal. Code Regs. § 3084(d). Section 3084.7(i) of the California Code of Regulations, title 15,

15   provides that a modification order "shall be completed within 60 calendar days of the appeal

16   decision which determined the need for a modification order." 15 Cal. Code Regs. § 3084.7(i). It

17   is undisputed that the modification orders in Grievance No. SQ-15-01751 were not timely

18   completed. Plaintiff argues that Section 3084.7(i)(3) provides that, where prison officials fail to

19   complete modification orders within the prescribed deadlines, inmates need not obtain a third level

20   decision in order to exhaust administrative remedies. Dkt. No. 25 at 6 and 8. Defendants argue

21   that Plaintiff has misread section 3084.7(i)(3).

22           Having reviewed section 3084.7, the Court agrees that Plaintiff's reading of subsection

23   (i)(3) is incorrect. Courts must "interpret statutes as a whole, giving effect to each word and

24   making every effort not to interpret a provision in a manner that renders other provisions of the

25   same statute inconsistent, meaningless or superfluous." *Boise Cascade Corp. v. U.S. E.P.A.*, 942

26   F.2d 1427, 1432 (9th Cir. 1991). In relevant part, Section 3084.7(i)(3) states: "If the modification

27   order is not completed after 120 calendar days of the issuance, the appellant may submit the

28   appeal to the next level for administrative review within 30 calendar days." Plaintiff argues that

                                                       12

1   the use of the word "may" renders appeal to the next level of administrative review permissive, or

2   optional. Dkt. No. 25 at 8. Plaintiff's reading of subsection (i)(3) would make subsection (d)(3)

3   ineffective. Subsection (d)(3) provides that a decision at the third level of review "constitutes the

4   decision of the Secretary of the California Department of Corrections and Rehabilitation on an

5   appeal . . . [and] exhausts administrative remedies." 15 Cal. Code Regs. § 3084.7(d)(3).

6   Plaintiff's reading of subsection (i)(3) takes that provision out of context and is unnecessarily

7   broad. Read in context, subsection (i)(3) allows the inmate the option of either (1) appealing to

8   the next level of review despite not yet having received a decision at the current level of review; or

9   (2) waiting until he receives the amended response before appealing to the next level of review.

10  The use of the word "may" is permissive in that it provides an inmate with two options regarding

11  *when* he seeks the next level of review. The use of the word "may" does not, as Plaintiff urges,

12  make the next level(s) of administrative review optional.

13          To the extent that Plaintiff is arguing that his administrative remedies should be considered

14  exhausted because Defendants failed to complete the modification orders within the prescribed

15  deadlines, the Court is unaware of any Ninth Circuit precedent finding such an exception.[5]  The

16  Court is guided by the Ninth Circuit's expression of hesitation regarding reading exceptions into

17  the PLRA's exhaustion requirement, and therefore declines to read an exception into the PLRA's

18  exhaustion requirement where there is no prior Ninth Circuit precedent. *See Ngo v. Woodford*,

19  539 F.3d 1108, 1110 (9th Cir. 2008) ("It is unclear whether we can read exceptions into the

20

21  _____
    [5] In *Brown v. Valoff*, 422 F.3d 926 (9th Cir. 2005), the Ninth Circuit left open the possibility that
22  unjustified delay in responding to a grievance, "particularly a time-sensitive one, may demonstrate
    that no administrative process is in fact available." *Brown*, 422 F.3d at 943 n.18. In *Brown*, the
23  inmate received a second level decision that informed him that his grievance would be processed
    as a staff complaint, and advised him that he could appeal the results of the internal affairs
24  investigation triggered by the staff complaint if he was dissatisfied with the results of the
    investigation. The prisoner filed suit three months after receiving the second level decision, and
25  did not receive the results of the investigation until fifteen months after the second level decision.
    Despite acknowledging the possibility that a prisoner's administrative remedies could be
26  exhausted where prison officials delayed in responding to the grievance, the *Brown* court
    ultimately found that the prisoner had not exhausted his administrative remedies because the
27  prisoner was not prejudiced by the length of time it took to conclude the staff investigation.
    Similarly, here, there is no indication that Plaintiff was prejudiced by the time it took to process
28  the modification orders, since the modification orders made findings in his favor.

13

PLRA's exhaustion requirement.").

To the extent that Plaintiff is arguing that he exhausted administrative remedies by

appealing this grievance to the third level, whether or not he received a third level decision,

Plaintiff incorrectly equates a modification order with a final third-level decision. A modification

order modifies a lower level decision. As a result, the original lower level decision is no longer in

effect and is instead replaced by an amended lower level decision. A modification order issued at

the third level does not suffice as a third level and final decision of the grievance on the merits.

Rather, it is a third level finding that the second level decision requires amendment. With the

issuance of a modification order at the third level, the inmate retains the option of appealing the

amended second level decision. Therefore, in order to exhaust his administrative remedies, the

inmate is still required to appeal the amended second level decision up to the third level of review

and obtain a final decision on the merits of his grievance.

The Court finds that Defendants' failure to complete the modification orders within the

time limits set forth in section 3084.7(i) did not excuse Plaintiff's failure to exhaust this grievance

by appealing to the third level of review. Nor did Plaintiff's appeal of this grievance to the third

level of review on October 6, 2015, January 14, 2016, and May 15, 2016 exhaust administrative

remedies. The Office of Appeals responded to these appeals by issuing modification orders and

thereby returning this grievance to the second level of review, meaning that a third level of review

was available.

**ii)       September 19, 2016 Amended Second Level Response**

Plaintiff argues that his administrative remedies were effectively unavailable because the

September 19, 2016 "document" erroneously informed him that the issues raised had already been

decided at a third level of review. Dkt. No. 25 at 8–9. Defendants argue that the September 19,

2016 amended second level response clearly stated that a third level of review remained.

The Court agrees with Defendants that the September 19, 2016 document was an amended

second level response and that it clearly specified that an additional level of review remained. The

September 19, 2016 amended second level response states:

**This response does not limit or restrict the availability of further relief via the inmate**

United States District Court
Northern District of California

1

2

3

> **appeals process.** If you have not already done so, and you wish to further appeal the decision, you must submit your staff complaint appeal through all levels of appeal review up to, and including, the Secretary's Level of Review.
>
> With the rendering of a decision at the Third Level of Review your administrative remedies will be considered exhausted.

4    Dkt. No. 25 at 49 (emphasis in original). While the September 19, 2016 amended second level

5    response references a "Third Level Decision," this Third Level Decision is the modification order

6    which directed an amendment of the second level decision. In other words, the Third Level

7    Decision referenced in the September 19, 2016 letter was not a final decision regarding the

8    grievance. Instead, this Third Level Decision sent the grievance back to the second level of

9    review for issuance of an amended response. Similar to any other second level response, this

10   amended second level response could be appealed by Plaintiff if he was dissatisfied with it, and an

11   appeal to the third level of review was required before administrative remedies would be deemed

12   exhausted. The language of the September 19, 2016 amended second level response did not

13   render Plaintiff's administrative remedies effectively unavailable.

14                      **iii)     Issues Decided on the Merits**

15          Plaintiff argues that because Defendants decided his grievance on the merits, his failure to

16   exhaust was excused. Dkt. No. 25 at 10. However, as discussed above, Grievance No. SQ-15-

17   01751 was not decided on the merits because Plaintiff did not appeal it to the third level of review

18   and obtain a final third level decision, as required to exhaust administrative remedies.

19   Accordingly, this argument fails.

20          Because Plaintiff failed to exhaust his administrative remedies with respect to Grievance

21   No. SQ-15-01751, the following claims are unexhausted and are DISMISSED for failure to

22   exhaust administrative remedies and without prejudice to refiling in a new action when

23   administrative remedies have been exhausted: that Officer Arana harassed him; that Officer Arana

24   removed him from his job in May 2015; that Officer Arana withheld his May 2015 pay; and that

25   Officer Arana moved him from his cell in June 2015.

26                      **b.     SQ-15-02514 and SQ-15-03254**

27          Grievance Nos. SQ-15-02514 and SQ-15-03254 alleged that Officer Arana harassed

28   Plaintiff from May 2015 to October 2015 (SQ-15-02514 and SQ-15-03254); that Officer Arana's

15

1    unit sergeant and Lt. Walls were aware of this behavior and refused to address it (SQ-15-02514);

2    and that Officer Arana filed a false CDC-128-B in or around October 2015 (SQ-15-03254).

3    However, it is undisputed that both SQ-15-02514 and SQ-15-03254 were exhausted after Plaintiff

4    filed this instant action on April 19, 2016.[6]  SQ-15-02514 was exhausted on June 22, 2016, Dkt.

5    No. 24-1 at 58, and SQ-15-03254 was exhausted on September 28, 2016, *id.* at 64–65.  These

6    grievances therefore did not exhaust administrative remedies for the purpose of this action.

7    *McKinney*, 311 F.3d at 1199 (PLRA requires exhaustion prior to filing suit).

8         Plaintiff argues that his failure to exhaust prior to filing suit should be excused because the

9    failure to timely exhaust was due to prison officials' failure to timely respond to his grievances.

10   The Court finds Plaintiff's argument to be unsupported by the record.  The record indicates that

11   prison officials timely responded to Grievance Nos. SQ-15-02514 and SQ-15-03254.

12        Pursuant to section 3084.8(c) of the California Code of Regulations, title 15, prison

13   officials have thirty working days from the date of receipt of an inmate's grievance to issue a first

14   level response; thirty working days from the date of receipt of an inmate's appeal of a first level

15   decision to issue a second level response; and sixty working days from the date of receipt of an

16   inmate's appeal of a second level decision to issue a third level response.  15 Cal. Code Regs. §

17   3084.8(c).

18        Grievance No. SQ-15-02514 was submitted by Plaintiff on August 26, 2015.  Dkt. No. 24-

19   1 at 57.  On September 8, 2015, this grievance was rejected at the first level, and then, on

20   September 16, 2016, it was finally accepted at the second level of review, after having bypassed

21   the first level.  Dkt. No. 24-1 at 58.  The second level response was due October 29, 2015, and was

22   timely mailed or delivered to Plaintiff on October 29, 2015.  Dkt. No. 24-1 at 58.  On November 2,

23   2015, Plaintiff appealed the second level response to the third level of review.  Dkt. No. 24-1 at

24   58.  On November 6, 2015, the appeal was rejected.  Dkt. No. 24-1 at 8.  The record is silent as to

25

26   _____

27   [6] The PLRA's exhaustion requirement applies whether the inmate files his claim in state or federal
     court.  *Johnson v. Louisiana ex rel. Louisiana Dept. of Public Safety and Corrections*, 468 F.3d
     278 (5th Cir. 2006); *see also Wright v. State*, 19 Cal. Rptr. 3rd 92, 95 (Cal. Ct. App. 2004)

28   ("[u]nder both state and federal law, a prisoner must exhaust available administrative remedies
     before seeking judicial relief").

16

1   why the appeal was rejected and when Plaintiff resubmitted the appeal.  The appeal was accepted

2   at the third level on April 11, 2016.  Dkt. No. 24-1 at 7.  The third level response was due July 6,

3   2016.  This grievance was timely denied at the third level on June 22, 2016.  Dkt. No. 24-1 at 7.

4   The record is silent as to why Plaintiff's appeal was not accepted until five months after it was

5   rejected at the third level on November 6, 2015.  The IPATS log indicates that during this five-

6   month period, this grievance was either screened out or rejected at least once, Dkt. No. 24-1 at 8,

7   which would result in Plaintiff having to resubmit the grievance and would contribute to a delay in

8   this grievance being accepted at the third level.  Plaintiff does not proffer any explanation for the

9   five-month gap between the November 6, 2015 rejection and the April 11, 2016 acceptance.

10  Accordingly, the lack of clarity in the record as to the exact reason for the delay in accepting this

11  grievance at the third level of review does not support a reasonable inference that Defendants

12  rendered administrative remedies unavailable to Plaintiff for this grievance.

13         Grievance No. SQ-15-03254 was submitted on November 26, 2015.  Dkt. No. 24-1 at 66–

14  69.  This grievance was cancelled and rejected multiple times before finally being accepted at the

15  first level of review on March 21, 2016.  The grievance was cancelled on December 7, 2015;

16  rejected on December 17, 2015; and rejected again on March 4, 2016.  Dkt. No. 24-1 at 66.  The

17  grievance was accepted at the first level on March 21, 2016.  Dkt. No. 24-1 at 66.  The first level

18  response was therefore due on May 2, 2016.  The first level response was timely mailed or

19  delivered to Plaintiff on April 19, 2016.  Dkt. No. 24-1 at 66 and 70–71.  On May 12, 2016,

20  Plaintiff appealed the first level response to the second level of review.  Dkt. No. 24-1 at 67 and

21  69.  On June 10, 2016, this appeal was rejected.  Dkt. No. 24-1 at 67.  On June 23, 2016, this

22  appeal was resubmitted by Plaintiff and accepted at the second level of review.  Dkt. No. 24-1 at

23  67.  The second level response was therefore due on August 5, 2016.  On July 13, 2016, the

24  second level response was timely mailed or delivered to Plaintiff.  Dkt. No. 24-1 at 67.  On July

25  21, 2016, Plaintiff appealed the second level response to the third level of review.  Dkt. No. 24-1

26  at 67 and 69.  The third level response was therefore due on October 17, 2016.  On September 28,

27  2016, the third level response was timely mailed or delivered to Plaintiff.  Dkt. No. 24-1 at 64–65.

28         Similar to Grievance No. SQ-15-02514, the record is silent as to what happened with

17

1    Grievance No. SQ-15-03254 between December 17, 2015 to March 4, 2016. It is unclear if the

2    March 4, 2016 rejection was an untimely processing of Plaintiff's grievance since there is nothing

3    in the record indicating when Plaintiff resubmitted this grievance after the December 17, 2015

4    rejection, or even whether there were multiple resubmissions and rejections during this time

5    period. The record does not support a reasonable inference that Defendants rendered

6    administrative remedies unavailable to Plaintiff for this grievance.

7         Neither Grievance No. SQ-15-02514 nor Grievance No. SQ-15-03254 was exhausted prior

8    to Plaintiff filing this action. The claims raised in Grievance No. SQ-15-02514 and Grievance No.

9    SQ-15-03254 with respect to Officer Arana — that Officer Arana had harassed him from May

10   2015 to October 2015; and that Officer Arana filed a false CDC-128-B in or around October 2015

11   — are therefore unexhausted. The Court DISMISSES these claims without prejudice to re-filing

12   in a new action after Plaintiff has exhausted his administrative remedies for these claims.

13                    **c.      Remaining Claims against Officer Arana**

14        Plaintiff also alleges that Officer Arana along with the other defendants, conducted a

15   "massive" search of his cell in February 2016, moved him from his cell in February 2016; and

16   added documents to a grievance he filed. Dkt. No. 1-1 at 6. None of the seven grievances filed

17   between January 2015, when Plaintiff alleges the harassment and retaliatory actions started, and

18   April 19, 2016, when this action was filed, raise these claims. There is nothing in the record

19   suggesting that Plaintiff has exhausted these claims Accordingly, the Court DISMISSES these

20   claims without prejudice to re-filing in a new action after Plaintiff has exhausted his administrative

21   remedies for these claims.

22                    **2.      Defendants Van Blarcom, Wells, Evan, and Mitchell**

23        Defendants argue that Plaintiff has exhausted none of his claims against Defendants Van

24   Blarcom, Wells, Evan, and Mitchell. Defendants do not specify why the claims against these

25   defendants are unexhausted, but presumably they are arguing that none of the three relevant

26   grievances — SQ-15-01751; SQ-15-02514; or SQ-15-03254 — specifically name Defendants Van

27   Blarcom, Wells, Evan, and Mitchell, as required by section 3084.2(a) of the California Code of

28   Regulations, title 15. Plaintiff argues that because prison officials decided his grievances on the

18

1    merits, his failure to identify Defendants Van Blarcom, Wells, Evan, and Mitchell by name in

2    Grievance No. SQ-15-01751; Grievance No. SQ-15-02514; and Grievance No. SQ-15-03254 is

3    excused.

4          Plaintiff is correct that a grievance is exhausted where prison officials decide the grievance

5    on the merits at all available levels of administrative review despite an inmate's failure to comply

6    with a procedural rule such as section 3084.2(a)'s requirement that all staff members involved in

7    the case be named. *Reyes v. Smith*, 810 F.3d 654, 656, 656–58 (9th Cir. 2016) (California inmate

8    whose grievance failed to name all staff members involved in his case, as required by 15 Cal.

9    Code Regs. § 3084.2(a), nevertheless exhausted deliberate indifference to serious medical needs

10   claim because claim was decided on its merits at all levels of review).  But, because none of these

11   three grievances can exhaust the claims set forth in this action — in that Grievance No. SQ-15-

12   01751 was not appealed to the final level of review and Grievance Nos. SQ-15-02514 and SQ-15-

13   03254 were not exhausted prior to Plaintiff filing this action — it is irrelevant whether prison

14   officials decided these grievances on the merits with respect to Defendants Van Blarcom, Wells,

15   Evan, and Mitchell.  The Court finds that Plaintiff has failed to exhaust his claims against

16   Defendants Van Blarcom, Wells, Evan, and Mitchell, and DISMISSES these claims without

17   prejudice to re-filing in a new action after Plaintiff has exhausted his administrative remedies for

18   these claims.

19                                           **CONCLUSION**

20         For the foregoing reasons, the Court finds that Plaintiff has failed to exhaust his

21   administrative remedies for all claims raised in this action.  Specifically, Plaintiff has not

22   exhausted his claims that Officer Arana retaliated against him by removing him from his job in

23   May 2015; withholding his May 2015 pay; moving him from his cell in June 2015; harassing him

24   daily from December 2015 to March 25, 2016; falsifiying a CDCR Form 128B; conducting a

25   "massive" search of his cell in February 2016; moving him from his cell in February 2016; and

26   adding documents to a grievance he filed.  Plaintiff has also failed to exhaust his claims against

27   Defendants Van Blarcom, Wells, Evan, and Mitchell.  The Court therefore GRANTS Defendants'

28   summary judgment motion and DISMISSES this action for failure to exhaust administrative

remedies and without prejudice to refiling in a new action after administrative remedies have been

exhausted.

The Clerk shall terminate Dkt. No. 24, enter judgment in favor of Defendants, and close

this case.

**IT IS SO ORDERED.**

Dated:  3/19/2018

_____
HAYWOOD S. GILLIAM, JR.
United States District Judge