UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEFFREY MILLS,<br><br>    Plaintiff,<br><br>v.<br><br>K. MITCHELL, et al.,<br><br>    Defendants. | Case No. 16-cv-05095-HSG<br><br>**ORDER GRANTING DEFENDANT ARANA'S MOTION FOR SUMMARY JUDGMENT; ORDERING PLAINTIFF TO SHOW CAUSE**<br><br>Re: Dkt. No. 63 |

**INTRODUCTION**

Plaintiff filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against San Quentin State Prison ("SQSP") officers K. Mitchell, E. Evans, J. Van Blarcom, B. Walls, and S. Arana, alleging First Amendment retaliation. Now pending before the Court are the following: (1) defendants Mitchell, Evans, Van Blarcom and Walls' motion to dismiss for failure to state a claim (Dkt. No. 57); and (2) defendant Arana's motion for summary judgment (Dkt. No. 63).

**DISCUSSION**

**I.    Procedural History**

Plaintiff commenced this action by filing a complaint in Marin County Superior Court on April 19, 2016. Dkt. No. 1 at 1. Plaintiff served Defendants in accordance with California law on August 3, 2016, and Defendants removed this action to federal court on September 2, 2016. Dkt. No. 1.

In its screening order, the Court found that the following allegations in the complaint stated cognizable First Amendment retaliation claims and cognizable state-law intentional tort claims for violation of Plaintiff's civil rights:

//

- **Claim No. 1**: Officer Arana retaliated against Plaintiff for filing a successful grievance against him by removing Plaintiff from his lead yard attendant job in May 2015 and reassigning him to sweeping and mopping stairs; withholding Plaintiff's May 2015 pay; moving Plaintiff from his cell in June 2015; and continually harassing Plaintiff from late 2014.

- **Claim No. 2**: Sgt. Van Blarcom, Lt. Wells, and Capt. Evans participated in the retaliation and civil rights violations when they were informed of, but did not stop, Officer Arana's retaliation and harassment.

- **Claim No. 3**: Officer Mitchell participated in the retaliation and civil rights violations when he covered up the other defendants' misconduct.

- **Claim No. 4**: All defendants engaged in retaliation and civil rights violations when they conducted a "massive" search of Plaintiff's cell in February 2016; moved him from his cell in February 2016; added false documents to his grievances; and falsified a 129B chrono.

Dkt. No. 14 at 5–7.

On March 19, 2018, the Court granted Defendants' motion for summary judgment for failure to exhaust administrative remedies. In the order granting summary judgment, the Court identified Grievance Nos. SQ-15-1751, SQ-15-02514, and SQ-15-03254 as the grievances relevant to the issues raised in this action and concluded that none of these grievances had been exhausted. *See generally* Dkt. No. 31. The Court entered judgment in favor of Defendants that same day. Dkt. No. 32. Plaintiff appealed. Dkt. No. 44.

On February 6, 2020, the Ninth Circuit found that the California Department of Corrections' handling of Grievances Nos. SQ-15-1751, SQ-15-2514, and SQ-15-2839 effectively made administrative remedies unavailable to Plaintiff,[1] and that this Court incorrectly disregarded Grievance No. SQ-15-2839 as unrelated to this action. Dkt. No. 41. The Ninth Circuit reversed and remanded for further proceedings. *Id.*

On January 19, 2021, the Court vacated the judgment and partially vacated the order of dismissal as follows:

> In accordance with the Ninth Circuit's memorandum opinion, the Court finds that Grievances Nos. SQ-15-1751, SQ-15-2514, and SQ-15-2839 effectively made administrative remedies unavailable to Plaintiff. Accordingly, Plaintiff has exhausted his administrative remedies with respect to his claims that (1) Officer Arana committed an intentional tort against him and retaliated against him in violation of the First Amendment

---

[1] Plaintiff did not raise Grievance No. SQ-15-3254 on appeal. *Mills v. Mitchell*, slip op. no. 18-15531 at 3 n.1 (Dkt. No. 46 at 3).

2

> when he removed Plaintiff from his lead yard attendant job in May 2015 and reassigned him to sweeping and mopping stairs; withheld Plaintiff's May 2015 pay; moved Plaintiff from his cell in June 2015; and, starting in late 2014, continually harassed Plaintiff in retaliation for filing a successful grievance; (2) Sgt. [Van] Blarcom, Lt. Walls, and Capt. Evans participated in the retaliation, civil rights violations, and intentional tort when they were informed of, but did not stop, Officer Arana's retaliation and harassment; and (3) Officer Mitchell participated in the retaliation, civil rights violations, and intentional tort when he covered up the other defendants' misconduct.  The Court therefore VACATES the grant of summary judgment in favor of Defendants on these claims.
>
> However, none of these three grievances exhausted Plaintiff's claims regarding Defendants' February 2016 alleged actions, i.e. his claims that Defendants retaliated against him, committed civil rights violations, and committed an intentional tort when they conducted a "massive" search of Plaintiff's cell on February 3, 2016; moved him from his cell on February 4, 2016; and added a falsified 129B chrono to his grievances on January 25, 2016.
>
> . . .
>
> The February 2016 incidents happened after Grievances Nos. SQ-15-1751, SQ-15-2514, and SQ-15-2839 were submitted to prison officials.  None of these grievances raise claims regarding events in 2016.  *See generally* Dkt. No. 24-1 at 33-62.  Plaintiff's [grievances] challenging the first level and second level decisions also do not mention events in 2016.  *See id.*
>
> Accordingly, the Court does not vacate its grant of summary judgment for failure to exhaust administrative remedies in favor of Defendants with respect to Plaintiff's claims that Defendants engaged in retaliation and civil rights violations when they conducted a "massive" search of Plaintiff's cell on February 3, 2016; moved Plaintiff from his cell on February 4, 2016; and added a falsified 129B chrono to his grievances on January 25, 2016.  Nor does the Court vacate the related dismissal without prejudice of these claims.  Plaintiff may re-file these claims in a new action after he has exhausted his administrative remedies for these claims.

Dkt. No. 49 at 3-4.  The Court reopened the case and set a briefing schedule.

Defendants Mitchells, Walls, Van Blarcom, and Evans have filed a motion to dismiss, Dkt. No. 57, and defendant Arana has filed a motion for summary judgment, Dkt. No. 63.  The claims remaining in this action are:  (1) Officer Arana committed an intentional tort against Plaintiff and retaliated against Plaintiff in violation of the First Amendment when he removed Plaintiff from his lead yard attendant job in May 2015 and reassigned him to sweeping and mopping stairs; withheld Plaintiff's May 2015 pay; moved Plaintiff from his cell in June 2015; and, starting in late 2014, continually harassed Plaintiff in retaliation for filing a successful grievance; (2) Sgt. Van Blarcom, Lt. Walls, and Capt. Evans participated in the retaliation, civil rights violations, and intentional tort when they were informed of, but did not stop, Officer Arana's retaliation and harassment; and (3) Officer Mitchell participated in the retaliation, civil rights violations, and intentional tort when

3

he covered up the other defendants' misconduct. Dkt. No. 49 at 4. For the reasons set forth below, the Court GRANTS defendant Arana's motion for summary judgment. Plaintiff has not demonstrated a triable issue of material fact as to whether the alleged actions were taken by defendant Arana or were retaliatory. The claims against defendants Mitchell, Van Blarcom, Walls, and Evans arise out of defendant Arana's alleged retaliatory actions. The complaint alleges that these defendants knowingly participated in, covered up, or allowed defendant Arana to take retaliatory actions against Plaintiff. Because Plaintiff's claims against defendant Arana fail as a matter of law, the Court orders Plaintiff to show cause why the Court should not *sua* sponte enter summary judgment in favor of defendants Mitchell, Van Blarcom, Walls, and Evans.

## II.     Defendant Arana's Motion for Summary Judgment

### A.     Factual Background

The following facts are undisputed unless otherwise indicated.

During the relevant time period, Plaintiff was housed at SQSP and defendant Arana was a correctional officer at SQSP. Dkt. No. 1-1 at 4; Dkt. No. 63-1 ("Arana Decl."), ¶ 1. In December 2014, Plaintiff was employed as a porter in SQSP West Block housing unit and responsible for cleaning the unit. Arana Decl., ¶ 2; Dkt. No. 63-2 ("Cervantes Decl."), ¶ 4. This position was a paid position with minimal supervision, allowing Plaintiff to work on every tier of West Block and to move about freely while performing his job. Cervantes Decl., ¶ 4.

On December 12, 2014, prison officials issued Plaintiff a rules violation report ("RVR") for possessing dangerous contraband in violation of prison rules. Defendants contend that they found a cellphone and cellphone charger in Plaintiff's possession. Cervantes Decl., ¶¶ 5-6 and Ex. A. Plaintiff alleges that he only possessed a USB TV cable that was connected to an earphone plug that was used as a lighter, and that the RVR's accusation of possession of a cell phone and cellphone charger was false. Dkt. No. 64 at 4.

On or about December 18, 2014, defendant Arana requested that Plaintiff be terminated from his job:[2]

---

[2] In his opposition, Plaintiff alleges that defendant Arana removed him from his porter position on December 7, 2014, Dkt. No. 64 at 2, but in his complaint, he alleges that the removal took place

4

> On Friday, March 21, 2014, All West Block inmate workers were informed about the department's expectations on work performance. The paid unit inmates have minimal supervision privilege and able to walk the unit with minimal supervision. All inmate workers were receptive and understood the department's expectations. On December 16, 2014, inmate Mills (G00005), 5W73, was found in possession of a cellphone. When confronted, inmate Mills became argumentative and uncooperative towards the Officer who made contact with him. Inmate Mills than proceeded to go to the toilet and flush the cell phone. Inmate Mills is a West Block worker. A cell phone charger was found in his possession. I am requesting Inmate Mills to be terminated due to possession of contraband and his demeanor towards the Correctional Officer is not becoming of a West Block worker. West Block workers are held to a higher standard and Inmate Mills ability to move around the unit with minimal supervision and introducing contraband is a risk to the safety and security of the unit and institution.

Dkt. No. 63-2 at 8. Defendant Arana removed Plaintiff from the work schedule pending the classification committee's decision.[3] Arana Decl. ¶ 5.

On December 28, 2014, Plaintiff filed Grievance SQ-15-0059 against defendant Arana regarding the removal from his job. Dkt. No. 64 at 2. In the grievance, Plaintiff alleged that when he asked defendant Arana why he was no longer employed, defendant Arana stated that he did not appreciate Plaintiff undermining his officers and that Plaintiff no longer had a job. Plaintiff challenged the removal as violating 15 Cal. Code Regs. § 3040(f), which only allows a classification committee to remove an inmate from his job. Dkt. No. 24-1 at 12-14.

On February 23, 2015, prison officials denied Grievance SQ-15-0059 at the first level, finding that cause existed for removing Plaintiff from his job and that Plaintiff's work supervisor had properly completed a CDC 128 Chrono documenting work performance and job expectations that were not met. Dkt. No. 24-1 at 16.

In March 2015, the classification committee rejected defendant Arana's request that Plaintiff be removed from his job and decided not to reassign Plaintiff. Cervantes Decl., ¶ 8; Arana Decl., ¶ 6.

On April 16, 2015, prison officials granted the request in Grievance SQ-15-0059 that

---

on December 17, 2014. The Court presumes that the December 7, 2014, date is an error, and that the date of removal was either December 17 or 18, 2014. The RVR was issued on December 12, 2014, and defendant Arana requested Plaintiff's removal from his job on December 18, 2014, Dkt. No. 63-2 at 8, making the December 7, 2014 date inconsistent with the other allegations.

[3] In September 2016, prison officials determined that defendant Arana violated prison regulations when he removed Plaintiff from his job pending the committee's decision. Prison regulations require a Committee Review prior to an inmate being removed from his work assignment. Dkt. No. 64 at 63.

5

1 Plaintiff be reassigned to his previous West Block Porter assignment. Dkt. No. 24-1 at 18-19.

2 Plaintiff returned to work on May 2, 2015. Plaintiff was assigned to a new position PTR 008.002 W/B Porter. The pay for PTR 008.002 is the same as the pay for PTR.001.010, his prior position, and is the highest pay scale for Grade 5. Cervantes Decl., ¶ 10; Arana Decl., Exs. A and B. Plaintiff alleges that the reassignment was retaliatory and due to defendant Arana giving Plaintiff's job to another inmate. Dkt. No. 64 at 2. Defendants contend that the reassignment was done by the classification committee and was due to the deactivation of Plaintiff's prior job classification, PTR.001.010.

Plaintiff's job responsibilities were modified upon his return. Plaintiff was limited to sweeping and mopping stairs. Plaintiff alleges that this modification in his job responsibilities was retaliatory and that when he complained about the new job responsibilities, defendant Arana told him, "A job is a job, get use (sic) to it." Defendant Arana says that he adjusted Plaintiff's porter duties because of Plaintiff's RVR. Because of Plaintiff's RVR, defendant Arana wanted to be able to easily supervise Plaintiff; did not want Plaintiff to have free access to all tiers and to the inmates located on those tiers; and wanted to prevent Plaintiff from distributing contraband to other inmates. With these concerns in mind, defendant Arana says that he adjusted Plaintiff's duties to limit Plaintiff's movement to the stairwells between the tiers. When Plaintiff told defendant Arana that he was dissatisfied with his new assignment, defendant Arana told him that he could take a new position elsewhere but if he wanted to remain working in West Block, his chore assignments would continue to be limited. Arana Decl. ¶¶ 6, 7.

Plaintiff alleges that defendant Arana withheld his May 2015 salary but paid all other inmates. Defendant Arana acknowledges that Plaintiff did not receive his pay for May 2015 until November 2015, but says that he did not cause the delay in the payment of the May 2015 salary. Defendant Arana states that, as a work supervisor, his involvement in inmate pay is limited to entering the hours worked by inmate employees into the institutional computer system. It is the accounting department that ensures that funds are deposited into the workers' accounts. Cervantes Decl., ¶ 10 and Ex. C; Arana Decl., ¶ 9 and Exs. A and B.

On June 9, 2015, Plaintiff was moved to a new cell. Plaintiff describes the cell move as

follows. Defendant Arana came to Plaintiff's cell and instructed Plaintiff to pack his belongings for a move because defendant Walls wanted the cell for inmate Rankins. When Plaintiff suggested that inmate Rankins be housed with Plaintiff, defendant Arana informed Plaintiff that if Plaintiff did not comply with the move, Plaintiff would be assigned to the administrative segregation unit. Dkt. No. 64 at 2. Defendant Arana states that he did not request the move, and that the move was requested by Sgt. E. Mann and effected by Officer Seilhan. Defendant Arana states that his understanding was that the cell move was part of an institutional adjustment in which inmates occupying lower bunks without a medical chrono or ADA accommodation requiring a lower bunk were moved in order to make room for inmates who had such requirements. Cervantes Decl., ¶ 12 and Ex. D; Arana Decl., ¶ 8.

On June 11, 2015, Plaintiff submitted Grievance No. SQ-15-01751. This grievance alleged that Officer Arana had harassed Plaintiff by, among other things, illegally removing him from his job. Dkt. No. 24-1 at 33–40.

On July 7, 2015, prison officials issued a third level decision denying Grievance SQ-15-0059. The third level decision found that Plaintiff had been returned to his job assignment and that the request for back wages was not warranted. Dkt. No. 24-1 at 10.

On August 27, 2015, an Inmate Assignment Lieutenant reassigned Plaintiff to a new job position. Defendant Arana was a correctional officer at the time, two levels below a lieutenant. Defendant Arana avers that he had no part in the reassignment. Arana Decl., ¶ 10 and Ex. B.

On September 20, 2015, Grievance No. SQ-15-01751 was denied at the second level of review. Dkt. No. 24-1 at 33–34.

On September 19, 2016, the SQSP Appeals Coordinator issued an amended second level response to Grievance No. SQ-15-01751. The amended second level response concluded that the removal of Plaintiff from his work assignment violated CDCR policy, specifically section 3040(c), (f) of the California Code of Regulations, title 15. The response found that the other allegations of harassment were unsupported.

Plaintiff states that defendant Arana harassed him daily, telling Plaintiff that defendant Arana did not appreciate Plaintiff undermining defendant Arana's officers. Dkt. No. 64 at 2.

7

**B.     Summary Judgment Standard**

Summary judgment is proper where the pleadings, discovery and affidavits show there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See* Fed. R. Civ. P. 56(a) (2014). Material facts are those that may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See id.*

A court shall grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial [,] . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The moving party bears the initial burden of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Id.* at 323. The burden then shifts to the nonmoving party to "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file, 'designate 'specific facts showing that there is a genuine issue for trial.'" *See id.* at 324 (citing Fed. R. Civ. P. 56(e)).

For purposes of summary judgment, the court must view the evidence in the light most favorable to the nonmoving party; if the evidence produced by the moving party conflicts with evidence produced by the nonmoving party, the court must assume the truth of the evidence submitted by the nonmoving party. *See Leslie v. Grupo ICA*, 198 F.3d 1152, 1158 (9th Cir. 1999). The court's function on a summary judgment motion is not to make credibility determinations or weigh conflicting evidence with respect to a disputed material fact. *See T.W. Elec. Serv., Inc., v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). "A scintilla of evidence or evidence that is merely colorable or not significantly probative does not present a genuine issue of material fact" precluding summary judgment. *See Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000).

//

8

### C. Legal Standard for First Amendment Retaliation Claims

"Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567–68 (9th Cir. 2005) (footnote omitted). Prisoners may not be retaliated against for exercising their right of access to the courts, *see Schroeder v. McDonald*, 55 F.3d 454, 461 (9th Cir. 1995), and this constitutional prohibition clearly includes retaliation for filing a complaint, *see Watison v. Carter*, 668 F.3d 1108, 114 (9th Cir. 2012).

### D. Analysis

Plaintiff alleges that defendant Arana retaliated against him for filing a successful grievance in the following ways: (1) removing Plaintiff in May 2015 from his lead yard attendant job and reassigning him to sweeping and mopping stairs; (2) withholding Plaintiff's May 2015 pay; (3) moving Plaintiff in June 2015 from his cell; and (4) continually harassing Plaintiff from late 2014 through March 2016. Defendant Arana also addresses an additional allegedly retaliatory action – the August 27, 2015 reassignment of Plaintiff to a new job.

#### 1) Plaintiff's Protected Conduct

Plaintiff identifies his protected conduct as the December 20, 2014 submission of a successful grievance. The Court presumes that Plaintiff is referring to Grievance No. SQ-15-0059, which was submitted on December 24, 2014, but accepted in 2015.[4] The first level decision was issued on February 23, 2015, and denied relief. The second level decision was issued on April 16, 2015, and granted Plaintiff's request to be reassigned to his previous West Block Porter assignment but denied the request for back pay. Dkt. No. 24-1 at 18-19. The third level decision,

---

[4] The other relevant grievance, Grievance No. SQ-15-01751, challenged Plaintiff's removal from his job on or about December 18, 2014. Grievance No. SQ-15-01751 cannot constitute the "protected conduct" for this action because it was filed on June 11, 2015, after the alleged retaliatory acts took place (December 18, 2014 removal from job; May 2015 reassignment to new position and change in job responsibilities; withholding of May 2015 pay; and June 2015 cell move).

9

issued on July 2, 2015, denied the grievance in its entirety because Plaintiff had been returned to his job assignment and back pay was unwarranted.

Defendant Arana has not directly challenged the "protected conduct" element. Instead, he argues that the alleged retaliatory actions were either not caused by him or were initiated for non-retaliatory reasons. Although the "protected conduct" element is not disputed by Defendants, the Court notes that it appears that Plaintiff has not met the "protected conduct" element for the December 18, 2014 job removal. The alleged protected conduct is the filing of Grievance No. SQ-15-0059 on December 28, 2014. Plaintiff has not identified any protected conduct prior to December 18, 2014.

### 2) May 2015 Removal from Porter Job and Reassignment to Different Job

Defendant Arana argues that he is entitled to summary judgment on the First Amendment retaliation claim arising out of the May 2015 job removal because he had no responsibility for, or involvement in, placing Plaintiff in his new job position; he modified Plaintiff's job responsibilities to preserve institutional safety and for retaliatory purposes; and his telling Plaintiff to quit and find another job does not qualify as an adverse act. Plaintiff argues that defendant Arana and his counsel have "sweetened up the evidence" by falsely alleging that Plaintiff received a disciplinary infraction for possessing a cell phone and cellphone charger when the photos clearly show that he only had a USB TV cable connected to an earphone plug that was used as a lighter. He further argues that defendant Arana's conduct should be considered as "part of a larger corporate practice," and the Court should consider that defendant Arana has a history of wrongful conduct. He also argues that Title VI of the Civil Rights Act prohibits discrimination on the basis of race, color or national origin, supports retaliation claims, and that retaliation has been recognized as a form of discrimination because the complainant is being subjected to different treatment. Plaintiff argues that being removed from his job to a lower job is an adverse action for the purposes of First Amendment retaliation and that there is circumstantial evidence supporting a finding of retaliation: namely, soon after he filed his complaint, he was removed from his job, demoted, moved from his cell, and had his pay withheld.

Viewing the record in the light most favorable to Plaintiff, the Court finds that defendant

Arana is entitled to summary judgment on this claim.

With respect to Plaintiff's placement in a new job assignment, uncontradicted prison records confirm that the classification committee, not defendant Arana, assigned Plaintiff to the new position because the prior position had been eliminated, and that the new position was comparable to his prior position in pay. Dkt. No. 63-1 at 6, 8; Dkt. No. 63-2 at 2-3. To counter the prison records, Plaintiff makes the general allegation that defendant Arana has a history of wrongful conduct and that defendant Arana gave his job to another inmate. However, Plaintiff does not dispute that his prior job position had been eliminated; does not specify or explain how defendant Arana's history of wrongful conduct shows that defendant Arana controlled or otherwise influenced the classification committee's reassignment of Plaintiff; and does not provide any specifics on the inmate to whom the job was given. Plaintiff has failed to demonstrate a triable issue of fact as to defendant Arana's involvement in Plaintiff's job reassignment or as to why Plaintiff was reassigned (elimination of prior position).

With respect to the change in Plaintiff's responsibilities, defendant Arana contends that the restrictions on Plaintiff's movement and responsibilities reasonably advanced the goal of prison security. Defendant Arana argues that Plaintiff's disciplinary violation justified limiting his access to other tiers and the inmates located on these tiers. In response, Plaintiff argues that defendant Arana has "sweetened the evidence" by falsely reporting in the RVR that Plaintiff possessed a cellphone charger to justify the retaliatory behavior, and that the pictures clearly indicate that he was only in possession of a USB TV cable connected to an earphone plug used as a lighter. The Court has reviewed the RVR and related documents, including the photo, and these documents do not support Plaintiff's claim that defendant Arana "sweetened" or otherwise distorted the RVR and related documents. The photos attached to the RVR show a cable with a USB plug that appears capable of charging a cellphone, even if it may also be capable of connecting to televisions or being used as a lighter. In addition, there is nothing in the record supporting Plaintiff's conclusory allegation that defendant Arana was involved in the issuance of the RVR, including deciding what disciplinary violation with which to charge Plaintiff. Officer Ogle reported the disciplinary violation, and Officer Williams conducted the rules violation report

11

hearing. Dkt. No. 63-2 at 6; Dkt. No. 64 at 26. None of the records related to the RVR support Plaintiff's allegations that defendant Arana was involved in charging him with possession of a cellphone charger, or that the charge was false.

There is no material dispute as to whether Plaintiff received a RVR for possession of a cellphone charger. Restricting an inmate's access to other tiers when he has been found guilty of possessing contraband serves a legitimate penological purpose. The Court is mindful that courts should "avoid excessive federal judicial involvement in prison administration" and afford "appropriate deference and flexibility to prison officials in the evaluation of proffered legitimate penological goals for conduct alleged to be retaliatory." *See Pratt v. Rowland*, 65 F.3d 802, 806-07 (9th Cir. 1995) (internal quotation marks and citation omitted) (granting summary judgment on retaliation claim because prison transfer was for legitimate penological purpose of encouraging prisoners to maintain contacts with family members and because proximity in time between protected activity and prison transfer was insufficient circumstantial evidence that prison officials involved in transfer decision aware of interview request). Plaintiff has failed to demonstrate a triable issue of fact as to whether defendant Arana modified Plaintiff's job responsibilities in retaliation for Plaintiff filing Grievance No. SQSP-15-0059.

With respect to Plaintiff's allegation that defendant Arana told Plaintiff that if he were dissatisfied with his new position and responsibilities, he could quit or find another job, the Court agrees that this statement did not constitute an adverse action. The record does not support an assertion that a reference to finding another job would be adverse or harmful to Plaintiff or would otherwise chill a person of ordinary firmness from complaining. Defendant Arana did not threaten or attempt to remove Plaintiff from the job, but instead accurately informed Plaintiff that if he wished to have different job responsibilities, he would have to find a different job.

### 3) May 2015 Pay

Defendant Arana argues that he is entitled to summary on the First Amendment retaliation claim arising out of Plaintiff being paid for his May 2015 work in November 2015, because he did not cause the pay to be withheld. It is undisputed that, with respect to an inmate's pay, defendant Arana is only responsible for inputting the inmate's hours worked. Payment is handled by the

12

accounting office.  Defendant Arana avers that he timely entered Plaintiff's hours into the system. Prison officials' investigation into the failure to timely pay Plaintiff for May 2015 found that defendant Arana had timely entered Plaintiff's May 2015 hours.  Dkt. No. 63-1 at 8.

Plaintiff does not directly dispute that defendant Arana timely entered in his hours or that the accounting office issues his pay.  Plaintiff instead argues that Grievance Nos. SQ-15-2839, SQ-15-2514 and SQ-15-1751 are direct evidence of defendant Arana's discriminatory intent.  Dkt. No. 64 at 9-10, 35-64.  Plaintiff also argues that the fact that he was the only inmate not paid in May 2015, coupled with the timing of the failure to pay coming "immediately after filing his complaint," is circumstantial evidence of defendant Arana's retaliatory action.  Dkt. No. 64 at 10.

Grievance Nos. SQ-15-2839, SQ-15-2514, and SQ-15-1751 are not direct evidence of retaliatory motive for an action taken in May 2015, because they were filed after May 2015.[5]  The circumstantial evidence identified by Plaintiff does not present a genuine issue of material fact precluding summary judgment.  Although Plaintiff was the only inmate not paid in May 2015 and this was Plaintiff's first paycheck since he was removed from his position in December 2014, this evidence is not significantly probative of retaliatory action by defendant Arana.  There is no evidence that defendant Arana controlled the disbursement of Plaintiff's pay or that defendant Arana failed to timely enter in Plaintiff's hours worked, which must happen before the paycheck can issue.  To the extent Plaintiff is arguing that defendant Arana's history and pattern of discrimination or harassment against him, as outlined in the three grievances identified above, is circumstantial evidence of retaliatory intent with respect to the late payment of his May 2015 paycheck, the allegations fail to demonstrate, or imply, a pattern of discrimination or harassment.

Circumstantial evidence can create a triable issue of fact, but evidence that is merely colorable does not present a genuine issue of material fact precluding summary judgment.  *See*

---

[5] Grievance No. 15-2839 was submitted on September 27, 2015, and challenged the failure to pay Plaintiff for May 2015 and to provide him with copies of his timekeeping and pay sheets for May 2015.  Grievance No. SQ-15-2514 was submitted August 31, 2015, and alleged that defendant Arana failed to allow Plaintiff to perform his job responsibilities as provided for in the grant of Grievance No. SQ-A-15-0059.  Grievance No. SQ-15-1751 was filed on June 11, 2015 and alleged that Plaintiff's removal from his job in December 2015 without committee action violated prison regulations.  *See* Dkt. No. 64 at 35-64.

*Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000). When the evidence on which a plaintiff relies is circumstantial, that evidence must be specific and substantial to defeat the motion for summary judgment. *Anthoine v. North Central Counties Consortium*, 650 F.3d 740, 753 (9th Cir. 2010) (granting summary judgment against plaintiff on claim that he was fired for being male because circumstantial evidence that three other males were terminated on same day did not provide specific evidence as to circumstances in which other males were terminated); *see e.g., Trap v. United States*, C No. 13-00003-DMG (JPRx), 2017 WL 8793328, at *26 (S. D. Cal. Oct. 31, 2017) (holding that prisoner-plaintiff could not raise genuine issue as to causation element of retaliation claim where it was uncontroverted that defendant correctional officer was ordered by others to take identified adverse action for reasons unknown to defendant).

Plaintiff alleges that the following constituted a pattern of harassment indicating retaliatory intent: the December 2014 removal from his job, the alleged May 2015 job reassignment and limitation of job responsibilities, and the late payment of his May 2015 pay. The December 2014 removal from the job is not circumstantial evidence of retaliatory intent because it happened prior to any protected conduct and was an immediate response to the disciplinary violation issued six days prior. The May 2015 job reassignment is not circumstantial evidence of Defendant Arana's retaliatory intent because there is no evidence that Defendant Arana was involved in the May 2015 job reassignment and because the reassignment occurred because the prior position had been eliminated. Finally, as discussed above, defendant Arana reasonably limited Plaintiff's job responsibilities in light of the RVR.

There is no genuine issue for trial as to whether Plaintiff's May 2015 paycheck was delayed because of retaliatory action by defendant Arana. *See, e.g., Percival v. Clark*, C No. 1:09-cv-01699-MJS PC, 2013 WL 237807, *3 (E.D. Cal. 2006) (plaintiff presented insufficient evidence to defeat summary judgment on retaliation claim where prison official presented sworn declarations that he had not initiated the complained-of cell search and plaintiff countered only with timing and sequence of events and his suspicion and belief that officer had initiated cell search and planted weapon).

//

#### 4) June 2015 Cell Move

Defendant Arana argues that he is entitled to summary judgment on the First Amendment retaliation claim arising out of the June 2015 cell move because there is no evidence that defendant Arana requested or otherwise caused the cell move.

Plaintiff states that when defendant Arana came to his cell to carry out the cell move, defendant Arana told Plaintiff that defendant Walls wanted the cell for inmate Rankins and when Plaintiff suggested that inmate Rankins be housed with Plaintiff, defendant Arana informed Plaintiff that if he did not comply with the move, he would be assigned to the administrative segregation unit. Dkt. No. 64 at 2. Plaintiff also argues that because a cell move must be initiated by someone, it is "clear, evidenced, distinct, manifest, patent, and plain that Defendant Arana has attempted to shift all his acts and omissions, that caused Plaintiff to be moved to a different cell . . . done in retaliation from Plaintiff exercising his constitutional right to file a grievance against Defendant Arana." Dkt. No. 64 at 5. Defendant Arana states without contradiction that the cell move was requested by Sgt. Mann and carried out by officer Seilhan, and that he did not have the authority as a correctional sergeant to make a housing decision, such as a cell move.

There is a dispute in the record as to whether the cell move was carried out by defendant Arana, as alleged by Plaintiff, or by officer Seilhan, as reported in prison records. However, assuming arguendo that the prison record incorrectly reported officer Seilhan as conducting the cell move, this does not create a triable issue as to whether defendant Arana requested the cell move. There is no evidence, direct or circumstantial, that defendant Arana requested the cell move. Plaintiff acknowledges that defendant Arana stated that defendant Walls wanted the cell move. Plaintiff does not dispute that only a sergeant, or someone senior to a sergeant, can authorize a cell move, and that defendant Arana was not a sergeant at that time. And simply because a cell move had to be requested by someone does not create a triable issue of fact as to whether defendant Arana was the "someone" who ordered the cell move. There is no genuine issue for trial as to whether Plaintiff was moved from his cell by defendant Arana in retaliation for his protected conduct because the record taken as a whole could not lead a rational trier of fact to find for Plaintiff on this claim.

### 5)   **August 2015 Cell Move**

Defendant Arana also addresses an additional allegedly retaliatory action – the August 27, 2015 reassignment of Plaintiff to a new job. The Court's order reopening this action references this reassignment in describing the issues raised in Grievance No. SQ-15-2839, Dkt. No. 49 at 4, but neither the complaint nor the Court's reopening order identifies this reassignment as an adverse action. But whether or not the complaint challenged the August 27, 2015 reassignment of Plaintiff to a new job as retaliatory in violation of the First Amendment, this claim fails on the merits in any event. Plaintiff does not address the August 2015 job reassignment in his opposition. Defendant Arana states without contradiction that he was not involved in the August 2015 job reassignment, and that the reassignment was handled by a lieutenant and defendant Arana was only a correctional officer at that time, two levels below lieutenant. Dkt. No. 63-1 at 3. Defendant Arana's statement is consistent with the evidence in the record. Plaintiff raised this claim in Grievance No. 15-2839, alleging that, on August 27, 2015, defendant Arana "illegally" assigned Plaintiff to another job, PTR.008.002, as part of a continuous pattern of retaliation, harassment, and oppression. Dkt. No. 24-1 at 46, 48. The second level decision on this grievance stated that Plaintiff was reassigned to position PTR 008.002 West Block Porter because his prior job, PTR.001.010, had been deactivated, and that PTR 008.002 had the same pay Grade 5 as his prior job, and that Plaintiff was receiving the highest pay scale for Grade 5. Dkt. No. 24-1 at 52-53. The third level decision on this grievance stated that the Inmate Assignment Lieutenant did not violate policy in reassigning Plaintiff when his prior position was eliminated and Plaintiff was placed into a job with an equal pay grade. Dkt. No. 24-1 at 44-45.

Plaintiff has not disputed that his prior position was eliminated or that the job reassignment was done by an Inmate Assignment Lieutenant, not Arana. Plaintiff has failed to demonstrate a genuine issue for trial as to whether defendant Arana reassigned Plaintiff to a new job on August 27, 2015 in retaliation for Plaintiff's protected conduct.

### 6)   **2014-2016 Harassment**

In both the complaint and the opposition, Plaintiff alleges that he is subject to daily harassment by defendant Arana:

16

- Defendant Arana daily harassed Plaintiff stating "he did not appreciate Plaintiff undermining his officers." Dkt. No. 1-1 at 5.
- Defendants [Arana, Van Blarcom, Walls, and Evans] retaliation (sic) continues as other officers or staff are participating up to date. Dkt. No. 1-1 at 6.
- [N]one of these Defendant Supervisors [Van Blarcom, Walls, and Evans] acted on Plaintiff's grievances, instead of interviewing, allowed Defendant Arana to continue harassing Plaintiff. Retaliatory acts from Defendant Arana continued as of March 25, 2106, the date that the complaint was drafted. Dkt. No. 64 at 3.

The Court does not consider allegations of harassment that took place after September 27, 2015, because the last of the grievances identified as exhausting the claims in this action was filed on September 27, 2015. Plaintiff has not identified any specific acts of harassment between December 18, 2014 and September 27, 2015, beyond the alleged retaliatory actions addressed above: December 18, 2014 removal from his job; May 2015 reassignment to a new position with restricted responsibilities; delayed payment of May 2015 paycheck and June 2015 cell move. The Court has already found that these actions were not retaliatory. Because Plaintiff has not identified any other acts of harassment during the relevant time period, the Court GRANTS summary judgment in favor of defendant Arana on this claim.

### III. Motion to Dismiss

Defendants Mitchell, Evans, Van Blarcom and Walls have filed a motion to dismiss for failure to state a claim, Dkt. No. 57; Plaintiff has filed an opposition, Dkt. No. 59; and Defendants have filed a reply, Dkt. No. 60. The claims against defendants Mitchell, Van Blarcom, Walls, and Evans arise out of defendant Arana's alleged retaliatory actions. The complaint alleges that these defendants knowingly participated in, covered up, or allowed defendant Arana to take retaliatory actions against Plaintiff.

As discussed above, the Court has found that there is no triable issue of fact as to the alleged wrongful conduct by defendant Arana, and has granted summary judgment in his favor because his conduct did not violate the Constitution. It appears to the Court that, even if adequately pled, allegations that defendants Mitchell, Evans, Van Blarcom, and Walls participated in defendant Arana's actions would thus, as a matter of law, fail as well, warranting summary judgment in their favor.

The Court accordingly provides notice of its intention to *sua sponte* grant summary judgment in favor of defendants Mitchell, Evans, Van Blarcom, and Walls based on the grant of summary judgment in favor of defendant Arana. *See Norse v. City of Santa Cruz*, 629 F.3d 966, 971-72 ("*Sua sponte* grants of summary judgment are only appropriate if the losing party has reasonable notice that the sufficiency of his or her claim will be in issue.") (internal quotation marks and citation omitted). Within twenty-eight (28) of the date of this order, Plaintiff shall show cause why the Court should not *sua sponte* enter summary judgment in favor of defendants Mitchell, Evans, Van Blarcom, and Walls. The Court understands that Plaintiff disagrees with the grant of summary judgment in favor of defendant Arana, but the response to the show cause order must not reargue that issue. Plaintiff's disagreement with the holding of this order is fully preserved for any eventual appeal.

## CONCLUSION

For the reasons set forth above, the Court GRANTS defendant Arana's motion for summary judgment, Dkt. No. 63. Within twenty-eight (28) of the date of this order, Plaintiff shall show cause why the Court should not *sua sponte* enter summary judgment in favor of defendants Mitchell, Evans, Van Blarcom, and Walls. The Court will hold defendants Mitchell, Evans, Van Blarcom and Walls' motion to dismiss, Dkt. No. 57, in abeyance pending Plaintiff's response to the Order to Show Cause.

This order terminates Dkt. No. 63.

**IT IS SO ORDERED.**

Dated: 6/21/2022

HAYWOOD S. GILLIAM, JR.
United States District Judge